# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TREVOR RINGGOLD, | Civil Action No. 11 - 974 |
| Plaintiff, | |
| v. | District Judge |
| | Chief Magistrate Judge Lisa Pupo Lenihan |
| C.O. MATTHEW KELLER, SUPERINTENDENT BRIAN COLEMAN, JOHN AND/OR JANE DOES 1-9, | ECF No. 6 |
| Defendants. | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss filed by Defendant Brian Coleman (ECF No. 6) be denied without prejudice as to Defendant Coleman's contention that Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act. It is further recommended that the motion be denied as to his contention that Plaintiff has failed to establish the requisite personal involvement necessary to establish a claim under Section 1983.

### II. REPORT

Plaintiff, Trevor Ringgold ("Plaintiff") is a state prisoner who is currently incarcerated at the State Correctional Institution at Albion in Albion, Pennsylvania. Plaintiff commenced this action against the following individuals employed at the State Correctional Institution at Fayette ("SCI-Fayette"), located in LaBelle, Pennsylvania: Correctional Officer Matthew Keller,

1

Superintendent Brian Coleman, and John or Jane Does 1-9.[1]  In his Complaint, Plaintiff alleges that Defendants violated his rights as protected by the First, Eighth, and Fourteenth Amendments to the United States Constitution.  He also brings state law claims of assault, battery, and intentional infliction of emotional distress.

### A.  Plaintiff's Allegations

Plaintiff alleges the following facts in his Complaint.  On July 28, 2009, while waiting in line for a meal, he was ordered to leave the dining hall by Defendant Keller for allegedly skipping in line.  (ECF No. 1 at ¶¶ 8-9.)  As Plaintiff turned to exit, he was ordered to approach Defendant Keller and when he complied, Defendant Keller began to physically strike and beat him, including slapping, kicking, punching, and kneeing Plaintiff.  (ECF No. 1 at ¶¶ 10-11.) Defendants John Does 1-7 then approached and joined in on the attack with Defendant Keller. (ECF No. 1 at ¶ 12.)  When it ended, Plaintiff was taken to medical to be treated for his injuries, which included receiving stitches and medicine to reduce swelling.  (ECF No. 1 at ¶¶ 13-14.)

Following the incident, Plaintiff was twice strip searched before being taken to "the hole"[2] for fifteen days until he was transferred to SCI-Greene.  (ECF No. 1 at ¶ 15.)  After the assault, Defendant Keller made false accusations against Plaintiff, including the allegation that Plaintiff assaulted him.  (ECF No. 1 at ¶ 16.)  As a result of these allegations, Plaintiff was immediately taken to "the hole" at SCI-Greene upon his transfer.  (ECF No. 1 at ¶ 17.)  When he obtained his personal property, which had been transported to SCI-Green from SCI-Fayette, it had been urinated on and otherwise abused and destroyed.  (ECF No. 1 at ¶ 19.)

---

[1] For the purposes of this Report and Recommendation, Defendants John or Jane Does will be referred to as "John Does."
[2] The Court assumes that this is the Restricted Housing Unit ("RHU").

The Department of Corrections' Office of Professional Responsibility ("OPR") conducted an investigation into the attack, and after the investigation, criminal charges were filed against Defendant Keller, which included simple assault, official oppression, and unsworn falsifications to authorities. (ECF No. 1 at ¶¶ 20-21.) Plaintiff filed grievances about the assault which were denied and he subsequently appealed or attempted to appeal the grievances without success. (ECF No. 1 at ¶ 38.)

Plaintiff contends that, upon information and belief, Defendant Keller had been involved in another assault on an inmate at SCI-Fayette of which Defendant Coleman and John Does 8-9 were aware. (ECF No. 1 at ¶¶ 22-23.)

### B. Standard of Review

Defendant Coleman has filed a Motion to Dismiss (ECF No. 6). When considering a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a

deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gills, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege

sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## C. Discussion

Plaintiff claims that Defendant Coleman acted in violation of the Eighth and Fourteenth Amendments when he failed to establish or maintain a policy, practice, or custom of monitoring, supervising, training, retraining, and disciplining Correctional Officers, such as Defendant Keller, who had a history of assaulting prisoners. He claims that his failure to do so created an unreasonable risk that Defendant Keller would continue to assault inmates and that Defendant Coleman was aware that this risk existed. Plaintiff further claims that Defendant Coleman failed to enforce the Use of Force policy at SCI-Fayette, which provides that force can be used by a staff member against an inmate only if it is necessary and for a legitimate purpose. Finally, he claims that although Defendant Coleman was not physically present during Plaintiff's assault, he acquiesced to the other Defendants' conduct by failing to investigate or discipline the other named Defendants.

Defendant Coleman seeks dismissal of Plaintiff's Complaint on the basis that Plaintiff has failed to exhaust his administrative remedies and has also failed to demonstrate the requisite personal involvement under § 1983.

**1. Exhaustion of Administrative Remedies**

Defendant Coleman argues that Plaintiff's claims against him should be dismissed due to Plaintiff's failure to comply with the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Id.³

Defendant Coleman contends that Plaintiff did not exhaust his administrative remedies under the grievance procedure codified by Department of Corrections Policy Number DC-ADM 804. In support of that position, Defendant Coleman offers the Declaration of Dorina Varner, an administrative officer in the Grievance Review Office, who attests that Plaintiff has not filed an appeal to the Superintendent or to final review on any grievance he has submitted. (ECF No. 6-1 at 4.) Plaintiff, however, asserts that he substantially complied with the administrative remedy process and that he exhausted those remedies that were available to him.

When ruling on a motion to dismiss under FED. R. CIV. P. 12(b)(6), a court generally should consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Berry v. Klem, 283 F. App'x 1, 3 (3d Cir. 2008) (quoting Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004). A court may also consider indisputably authentic documents. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004). If other matters are considered by the court, a motion to dismiss should be converted to a motion for summary judgment. Berry, 283 F. App'x at 3 (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1197 (3d Cir. 1993)); *see also* Fed. R. Civ. P. 12(d). "Reliance on declarations from prison officials or Corrections Department administrators requires conversion." Berry, 283 F. App'x at 3 (citing Camp v. Brennan, 219 F.3d 279, 280 (3d Cir. 2000)); *see also* Goodson v. Maggi, No. 08-44, 2010 U.S. Dist. LEXIS 26805, 2010 WL 1052963, at *1 (W.D. Pa. Feb. 24, 2010) (Declaration supporting motion to

---

³ It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) (". . . . failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaint."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

dismiss on ground that plaintiff had not exhausted claim as required by the Prison Litigation Reform Act required conversion). Hence, Defendant Coleman's submission of the Varner Declaration requires conversion.

Defendant Coleman has not moved in the alternative for summary judgment. Thus, Plaintiff did not receive sufficient notice of the possible conversion of the motion to dismiss to a motion for summary judgment. Reyes v. Sobina, 333 F. App'x 661, 662 n.1 (3d Cir. 2009) (citing In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 288-89 (3d Cir. 1999)). Therefore, the Court is compelled to comply with the dictates of Federal Rule of Civil Procedure 12(d) and give Plaintiff "a reasonable opportunity to present all the material that is pertinent" to Defendant's motion. FED. R. CIV. P. 12(d). Accordingly, it is recommended that Defendant Coleman's motion to dismiss be denied on this ground without prejudice to him raising the issue again in a motion for summary judgment.

## 2. Personal Involvement

Defendant Coleman also argues that Plaintiff's claims against him should be dismissed because Plaintiff has failed to demonstrate the personal involvement necessary to establish a claim under § 1983.

To establish individual liability under section 1983, "[a] defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also* Rizzo v. Goode, 423 U.S. 362 (1976). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08. In cases involving a supervisory defendant, the Third Circuit has stated that "a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to

violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 & n.5 (3d Cir. 2010) (citing A.M. ex rel. J.M.K. v. Luzerne Cnty., 372 F.3d 572, 586 (3d Cir. 2004)). However, "allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." Rode, 845 F.2d at 1207. Moreover, to impose liability under the knowledge and acquiescence theory, there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate."[4] Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988). The Third Circuit has also held, with respect to supervisory liability, that individuals who are policymakers can be liable for constitutional violations if "with deliberate indifference to the consequences, [they] established and maintained a policy, practice, or custom which directly caused [the] constitutional harm." A.M., 372 F.3d at 586 (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).

---

4     In light of the Supreme Court's decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court questions the continuing validity of the Third Circuit's supervisory liability jurisprudence. As stated by the Supreme Court:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a [Section] 1983 or a Bivens action – where masters do not answer for the torts of their servants – the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

Iqbal, 556 U.S. at 677. However, although the Third Circuit has acknowledged Iqbal's potential impact on Section 1983 supervisory liability claims, it has declined to hold that a plaintiff my no longer establish liability under Section 1983 based on a supervisor's knowledge of and acquiescence in a violation. Santiago v. Warminster Twp., 629 F.3d 121, 130 n.8 (3d Cir. 2010); Bayer v. Monroe, 577 F.3d 186, 190 n.5 (3d Cir. 2009). Accordingly, the Court follows the other courts in this district that have continued to apply the Third Circuit's traditional supervisory liability analysis.

Defendant Coleman contends that Plaintiff's claim that he failed to supervise, train, and discipline prison employees fails as a matter of law. He cites to Chinchello v. Fenton, 805 F.2d 126 (3d Cir. 1986), and argues that a supervisor has "no affirmative constitutional duty to train, supervise, or discipline so as to prevent [constitutional violations]." Id. at 133. However, Defendant Coleman's reliance on Chinchello is misplaced and failure to train, supervise and discipline may constitute sufficient personal participation to state a claim, if other conditions are met.

The Court notes that, at the time Chinchello was decided, i.e., in 1986, the law was not clearly established that supervisors had an affirmative obligation. *See, e.g.,* Rosenberg v. Vangelo, 93 F. App'x 373, 379 (3d Cir. 2004) (discussing Brown v. Grabowski, 922 F.2d 1097 (3d Cir. 1990), and stating that at the time the events in Brown occurred, in 1985, direct and active involvement was required to establish supervisory liability and Brown held qualified immunity was called for because no evidence existed of the defendants' direct and active involvement). However, in 1989, the Supreme Court in City of Canton v. Harris, 489 U.S. 378 (1989), considered and announced the degree of fault required to hold a public entity liable for failure to train public employees. Id. at 388-92. The Supreme Court held that only where a public entity's failure to train its employees in a relevant respect reflects a deliberate indifference to the constitutional rights of its inhabitants can such a claim yield liability. Id. at 392; *see also* Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1999) (interpreting Canton). "We hold today that the inadequacy of police training may serve the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Canton, 489 U.S. at 388. This standard of fault has been held to apply not only to public entities themselves, but to individual supervisory public officials as well. *See* Sample,

885 F.2d at 1118. The Third Circuit since Canton requires that a plaintiff alleging supervisory liability of the sort contemplated by Plaintiff for failure to train must make a showing identifying a specific practice or procedure that a supervisor failed to employ. Id. Further, the Third Circuit requires a district court to make specific findings that existing custom or practice without that specific practice or procedure creates a risk of violations, that the supervisor was aware of the risk and indifferent to it, and that the alleged underlying violation by the public employee was a result of the supervisor's failure to employ that practice or procedure in training. Id.

In his Complaint, Plaintiff claims that Defendant Coleman, in his capacity as Superintendent at SCI-Fayette, was responsible for developing policies and procedures regarding the prison's day-to-day operations including monitoring, supervising, training, retraining, and disciplining employees. He contends that Defendant Coleman had prior knowledge of another instance whereby an inmate had been assaulted by Defendant Keller; that Coleman acted with deliberate indifference by failing to maintain a policy, practice, or custom of monitoring, supervising, training, retraining, and disciplining correctional officers such as Defendant Keller who had been involved in assaults on inmates in the past; and that said deliberate indifference contributed to and proximately caused his injuries. He further claims that Defendant Coleman acted with deliberate indifference by failing to enforce the DOC's Use of Force policy and that this failure also contributed to and proximately caused his injuries. Reading these allegations in the light most favorable to Plaintiff, the Court cannot conclude that there is no set of facts under which Plaintiff might establish supervisory liability against Defendant Coleman. Indeed, Plaintiff has identified two alleged practices – failure to properly supervise and train, among other things, prison officials who had previously been involved in inmate assaults and failure to enforce the DOC's Use of Force policy – which allegedly caused his injuries. Accordingly, at

this early stage the Court is satisfied that these allegations are sufficient to plausibly give rise to a supervisory liability claim. As such, Defendant Coleman's motion to dismiss should be denied as to his contention that Plaintiff has failed to establish the requisite personal involvement as to him.

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Defendant Brian Coleman (ECF No. 6) be denied without prejudice as to Defendant Coleman's contention that Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act. It is further recommended that the motion be denied as to his contention that Plaintiff has failed to establish the requisite personal involvement necessary to establish a claim under Section 1983.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B)&(C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: April 18, 2012

    /s/ Lisa Pupo Lenihan_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: All Counsel of Record