# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TREVOR RINGGOLD, | ) |
| Plaintiff, | ) Civil Action No. 11 – 974 |
| | ) |
| v. | ) Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) ECF No. 53 |
| CO MATTHEW KELLER, CO WILLIAM ZOSKY; SGT CLAYTON STONER; LT JACOB WRIGHT and SUPERINTENDENT BRIAN COLEMAN; | ) |
| Defendants | ) |

## MEMORANDUM OPINION

For the reasons that follow, the moving Defendants' Motion for Summary Judgment (ECF No. 53) will be granted.

**A. Procedural Background**

Plaintiff, Trevor Ringgold ("Plaintiff") is a state prisoner who is currently incarcerated at the State Correctional Institution at Albion in Albion, Pennsylvania. Plaintiff commenced this action through counsel on July 27, 2011, and filed an Amended Complaint on November 30, 2012. He has sued the following individuals employed at the State Correctional Institution at Fayette ("SCI-Fayette"): Correctional Officer Matthew Keller; Correctional Officer William Zosky; Correctional Officer Tim Mari, Sergeant Clayton Stoner; Lieutenant Jacob Wright; and Superintendent Brian Coleman. All Defendants, except for C.O. Keller, have filed a Motion for Summary Judgment, which is now ripe for review.

**B. Factual Background**

Plaintiff alleges the following facts in his Amended Complaint (ECF No. 34.) On July 28, 2009, he was detained as an inmate with the Pennsylvania Department of Corrections and housed at SCI-Fayette. Id. at ¶ 12. On this date, while Plaintiff was waiting in line for a meal, he was ordered to approach by Defendant Keller for allegedly skipping in line. Id. at ¶ 13. When he complied, Defendant Keller immediately began to physically strike and beat him, including slapping, kicking, punching, and kneeing Plaintiff. Id. at ¶¶ 14-15. Defendants Zosky, Mari and Stoner then approached and joined in on the attack with Defendant Keller Id. at ¶ 16. When it ended, Plaintiff was taken to medical to be treated for his injuries. Id. at ¶ 17. He received stiches and medicine, which he had difficulty taking because the water supply to his cell had been shut off. Id. at ¶ 18.

Following the incident, Plaintiff was twice strip searched before being taken to "the hole" for fifteen days until he was transferred to SCI-Greene. Id. at ¶ 19. After the assault, Defendants Keller, Zosky, Mari and Stoner made false accusations against Plaintiff, including the allegation that Plaintiff was the one who assaulted Keller. Id. at ¶ 20.[1] As a result of these allegations, Plaintiff was immediately taken to "the hole" at SCI-Greene upon his arrival. Id. at ¶ 21. When he obtained his personal property, which had been transported to SCI-Green from SCI-Fayette, it had been urinated on and otherwise abused and destroyed. Id. at ¶ 23.

The Department of Corrections' Office of Professional Responsibility ("OPR") conducted an investigation into the attack, and after the investigation, criminal charges were filed against Defendant Keller, which included simple assault, official oppression, and unsworn

---

[1] Although this allegation is made in the fact section of the Amended Complaint there is no count or legal cause of action set forth for any of the activity that occurred after the actual assault. All counts are focused and stem from the actual assault so the Court does not address these issues herein.

falsifications to authorities. Id. at ¶¶ 24-25. Plaintiff filed grievances about the assault, which were denied, and he subsequently appealed or attempted to appeal without success. Id. at ¶ 41.

Plaintiff contends that, upon information and belief, Defendants Keller, Zosky, Mari and Stoner had been involved in other assaults on other inmates and other corrections officers of which Defendants Coleman and Wright were aware. Id. at ¶¶ 26-27. Plaintiff states that Defendant Coleman was responsible for enforcing the DOC Use of Force policy and for ensuring that Defendants Keller, Zosky, Mari and Stoner followed the policy. Id. at ¶¶ 32-33. According to Plaintiff, Defendant Coleman failed to enforce the Use of Force policy, and he, along with Defendant Wright acquiesced in the other named Defendants' conduct by failing to properly investigate and/or discipline them. Id. at ¶¶ 34, 42.

Plaintiff states that Defendant Wright was a direct supervisor over the Defendants, was aware of their previous assaults on inmates and other staff, and that he failed to train, retrain, supervise, monitor and discipline Defendants Keller, Zosky, Mari and Stoner. Id. at ¶¶ 37-38.

With regard to Defendant Stoner, Plaintiff alleges that he was not only an assailant but also a supervisor on duty and was responsible for monitoring Defendants Keller, Zosky and Mari. Id. at ¶ 35. He also alleges that Defendant Stoner knew of these Defendants' activities on the day in question. Id. at ¶ 36.

### C. Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York,

979 F.2d 1579, 1582 (3d Cir. 1992).  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.  Id. at 322.  Thus, he is required to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324.

An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52).  If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted.  Anderson, 477 U.S. at 249-50.  Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form.  *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

4

**D. Discussion**

Plaintiff asserts the following six Counts in his Amended Complaint: an Eighth Amendment excessive force claim against Defendants Keller, Zosky, Mari and Stoner (Count I); an Eighth Amendment claim against Defendant Coleman premised on supervisor liability (Count II); an Eighth Amendment claim against Defendant Stoner premised on supervisor liability (Count III); an Eighth Amendment claim against Defendant Wright premised on supervisor liability (Count IV); an Assault and Battery claim against Defendants Keller, Zosky, Mari and Stoner (Count V); and an Intentional Infliction of Emotional Distress claim against Defendants Keller, Zosky, Mari and Stoner (Count VI).

1. Excessive Force (Count I)

In Count I, Plaintiff claims that Defendants Keller, Zosky, Mari, and Stoner, "acting in concert and conspiracy," used unnecessary and excessive force by beating and assaulting him with the intention to cause harm. Under the Cruel and Unusual Punishments Clause of the Eighth Amendment, inmates are protected against the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 219 (1986). In the context of an excessive force claim, the core judicial inquiry of whether the measure taken inflicted unnecessary and wanton pain and suffering is that set out in Whitley: "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Although the Eighth Amendment protects inmates against cruel and unusual punishment, it "does not protect an inmate against an objectively *de minimis* use of force." Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9.

In determining whether a defendant has used excessive force in violation of the Eighth Amendment, courts look to several factors including: "(1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts to temper the severity of the forceful response." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (internal quotations and citation omitted). The extent of injuries that an inmate suffers is relevant, but "does not end" this analysis. Hudson, 503 U.S. at 7. Consideration of these factors permit a court to make inferences concerning "whether the use of force could plausibly have been thought necessary" or whether the circumstances show "such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). "Summary judgment in favor of a defendant is not appropriate if it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." Brooks, 204 F.3d at 106 (citing Whitley, 475 U.S. at 322.)

Plaintiff claims that Defendants Keller, Zosky, Mari, and Stoner used excessive force by slapping, kicking, punching, and kneeing him while in the dining hall on July 28, 2009. The moving Defendants rely, in large part, on the security video footage of the incident in question to support their position that Plaintiff's version of events is incorrect and that the officers involved used necessary and reasonable force under the circumstances. The Court agrees with their position. A review of the video footage clearly shows that Defendant Keller used excessive force when he basically attacked Plaintiff in the dining hall. The videotape also clearly shows that Defendants Zosky, Mari and Stoner intervened in the altercation and, to the extent they used

force against Plaintiff, that use of force was reasonable, justified, and, most importantly, not excessive. The video shows these officers restraining Plaintiff, it does not show them attacking him, and there is no disputed issue of fact for the jury.

The video shows Defendant Keller ordering Plaintiff to approach after he sees Plaintiff moving past the other inmates in line in the dining hall. As soon as Plaintiff makes his way over to Defendant Keller, Keller throws his walkie-talkie on the table next to him, pulls his arm back with his fist clinched, and throws multiple punches to Plaintiff's face and body. Although there is no sound on the video, the use of force by Keller appears to be entirely unnecessary. Approximately six punches are thrown before Defendants Zosky and Mari enter the picture. Defendant Zosky grabs Plaintiff by the waist and legs and Defendant Mari tackles Plaintiff to the ground. Even though Plaintiff was not the aggressor, and it was he whom Defendants Zosky and Mari "tackled" to the ground so as to separate him from Keller, it is clear that Zosky and Mari were simply trying to break-up the physical confrontation and the force they used to pull Plaintiff away from Keller was appropriate under the circumstances. In addition, at the point Zosky and Mari enter the scene Plaintiff is hitting Officer Keller. While the Court is not faulting Plaintiff for this as he is simply trying to defend himself, Mari and Zosky may not have witnessed the commencement of the attack and may only have seen Plaintiff fighting with Keller. This further supports the fact that no reasonable trier of fact could find that Mari and Zosky used excessive force against the Plaintiff.

The video continues showing Defendants Zosky and Mari attempting to hold Plaintiff down on the ground, and then Keller jumps over them and continues to throw punches at Plaintiff while he is being restrained by the other officers. Defendant Stoner then enters the picture and he grabs and pulls away Defendant Keller in order to prevent him from continuing to

punch Plaintiff. At that point the security camera shifts up to the ceiling in the dining hall and does not resume videoing the incident until approximately six to seven seconds later.[2] When it shifts back and resumes filming, Plaintiff is restrained on the ground and the incident appears to be over. Approximately forty seconds later, Plaintiff is lifted up from the ground and escorted away in handcuffs.

Upon review of the security footage, and examining the circumstances of this case under the appropriate factors, it is clear that the force applied by Defendants Zosky, Mari or Stoner was not excessive so as to exceed Eighth Amendment limitations. At no point in time did Defendants Zosky, Mari, or Stoner slap, kick, punch, or knee Plaintiff as he alleges. Instead, the video clearly indicates that the force used by the officers was used in order to separate Plaintiff from Keller and to take Plaintiff to the ground. The force used by the officers throughout the remainder of the incident, was minimal, at most, and applied in a good-faith effort to restore order by breaking up the physical attack. As instructed by the Supreme Court, "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." Whitley, 475 U.S. at 321-22. Here, Plaintiff's allegations against Defendants Zosky, Mari and Stoner are discredited by the security video footage, which fails to show that they used force maliciously or sadistically to cause harm. No rational trier of fact could view the video footage and find that these Defendants used excessive force under the circumstances. As such, they are entitled to summary judgment on Count I.

    2. <u>Claims premised on Supervisor Liability (Counts II, III, IV)</u>

---

[2] While this is disturbing, it does not give right to a cause of action, nor does Plaintiff argue that it does. Plaintiff admits that 8 to 10 people at the institution had access to the controls of the video cameras. See ECF No. 55 ¶36 (Defendants' Concise Statement of Material Facts) and ECF No. 62) Plaintiff's Response thereto). The 6 to 7 seconds that elapse are de minimus and are not alleged to have been part of any conspiracy to cover up the incident as at this point the attack by Keller has already occurred.

In Count II, Plaintiff claims that Defendant Coleman failed to establish or maintain a policy, practice, or custom of monitoring, supervising, training, retraining, and disciplining correctional officers, such as Defendants Keller, Zosky, Mari, and Stoner, who had a history of assaulting prisoners and other DOC staff, and that he failed to enforce the DOC's Use of Force policy to ensure that these Defendants used force for only a legitimate purpose. In Count III, Plaintiff claims that Defendant Stoner failed to supervise and monitor Defendants Keller, Zosky, and Mari on the date of the incident in question. In Count IV, Plaintiff claims that Defendant Wright failed to take meaningful action to supervise, monitor, retrain, and discipline Defendants Keller, Zosky, Mari, and Stoner after previous assaults. Plaintiff claims that the actions of Defendants Coleman, Stoner, and Wright constituted deliberate indifference and contributed to and proximately caused the violation of his right to be free from cruel and unusual punishment.

In 1986, the Third Circuit held that "while supervising public officials may not in any way authorize, encourage, or approve constitutional torts, they have no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). At that time, however, the law was not clearly established that supervisors had an affirmative obligation. *See*, *e.g.*, Rosenberg v. Vangelo, 93 F. App'x 373, 379 (3d Cir. 2004) (discussing Brown v. Grabowski, 922 F.2d 1097 (3d Cir. 1990), and stating that at the time the events in Brown occurred, in 1985, direct and active involvement was required to establish supervisory liability and Brown held qualified immunity was called for because no evidence existed of the defendants' direct and active involvement).

However, in 1989, the Supreme Court in City of Canton v. Harris, 489 U.S. 378 (1989), considered and announced the degree of fault required to hold a public entity liable for failure to train public employees. Id. at 388-92. The Supreme Court held that only where a public entity's

failure to train its employees in a relevant respect reflects a deliberate indifference to the constitutional rights of its inhabitants can such a claim yield liability. Id. at 392; *see also* Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1999) (interpreting Canton). They held that "the inadequacy of police training may serve the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Canton, 489 U.S. at 388. This standard of fault has been held to apply not only to public entities themselves, but to individual supervisory public officials as well. *See* Sample, 885 F.2d at 1118.

Since Canton, the Third Circuit requires that a plaintiff alleging supervisory liability of the sort contemplated by Plaintiff must make a showing identifying a specific practice or procedure that a supervisor failed to employ. Id. It is "not enough . . . to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. The district court must insist that [the plaintiff] identify specifically what it is that [the defendant] failed to do that evidences his deliberate indifference." Id. With respect to supervisory liability for Eighth Amendment claims, plaintiffs must first identify a "specific supervisory practice or procedure" that the defendant supervisor failed to employ, and then prove the following: 1) the existing custom and practice without that specific practice or procedure created an unreasonable risk; 2) the supervisor was aware that the unreasonable risk was created; 3) the supervisor was indifferent to that risk; and 4) the injury resulted from the policy or practice. Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample, 885 F.2d at 1118).

The simplest way for a plaintiff to make out such a claim is to demonstrate a supervisor's failure to respond appropriately when confronted by a pattern of injuries similar to the Plaintiff's, thereby suggesting deliberate indifference on the part of the supervisor. Sample, 885 F.2d at

1118. The Third Circuit further instructed that that is not the only way to make out such a claim, as "there are situations in which the risk of constitutionally cognizable harm is so great and obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, or knowledge of that unreasonable risk, and of indifference to it." Beers-Capitol, 256 F.3d at 134 (citation omitted). Thus, for Plaintiff's claim seeking to hold Defendants Coleman, Stoner and Wright liable for a deficient policy, he must show either that these Defendants failed to adequately respond to a pattern of past occurrences of injuries like the Plaintiff's or that the risk of constitutionally cognizable harm was so great and so obvious that the risk and the failure of these Defendants to respond supports a finding that the four-part test stated above is met.

In this case, Plaintiff alleges that Defendants Coleman and Wright were aware of a history of assaults committed by Defendants Keller, Zosky, Mari, and Stoner. According to the record, however, the only Defendant who has a founded incident of force in his past is Stoner, and, in this case Stoner was the one who grabbed Keller while he was on top of Plaintiff. Thus, the previous allegations of assaults, founded or not, lodged against Stoner are irrelevant to the instant action.[3] Defendant Mari has no discipline in his past nor has it been alleged during his career that he used excessive force. In fact, he has not even had a grievance filed against him for using excessive force. Defendant Zosky stated in his deposition that he had "no knowledge" of an inmate even filing a grievance against him for using excessive force and to the best of his knowledge has not been the subject of an excessive force allegation. Finally, the only founded

---

[3] In his deposition, Defendant Stoner stated that he had been disciplined in a case where it was determined that he used force against a Corrections Officer Trainee. He ultimately received a fifteen-day suspension without pay for that offense. Then early in his career, while at SCI-Graterford, he was terminated for using excessive force against an inmate but he ultimately received his job back. He stated that the incident occurred approximately 12 years ago.

11

incident of excessive force against Defendant Keller is the instant case.[4]  However, in his deposition he admitted that he had been *accused* of using excessive force in the past but the only time he was ever reprimanded prior to the incident at issue herein was for witnessing another CO "scuffling" with an inmate and not writing a report about it afterward.

Next, Plaintiff alleges that the supervisory Defendants failed to train and retrain their subordinates on the DOC's Use of Force policy.  The record shows that Plaintiff is incorrect.  Defendants Mari, Zosky, Stoner and Keller testified that DOC officers receive initial use of force training at the DOC Academy before they begin employment and annual training thereafter.  They each explained the Use of Force policy in their depositions.  As Defendants' point out, every Corrections Officer knows not to assault an inmate because it is "intuitive" by virtue of being a human being.  The fact that Defendant Keller chose not to follow the training given to him does not mean that he was not trained.

Plaintiff alleges that the supervisory Defendants failed to monitor their subordinates. The DOC monitors abuse allegations through DC-ADM-001, Inmate Abuse Allegation Monitoring Policy.  Plaintiff also alleges that the supervisory Defendants failed to investigate allegations of excessive force.  Again, this is incorrect.  The Court is well aware that investigations occur when abuse allegations are made by an inmate or staff member at the DOC and there is no material issue of fact as to this issue.

Plaintiff alleges that the supervisory Defendants failed to discipline Defendants Zosky and Mari as a result of this incident.  However, the investigation into this incident found that Defendants Zosky and Mari had done nothing wrong and this finding is supported by the security

---

[4] However, Defendant Keller testified in his deposition that he worked "for a very long time" in the Long Term Segregation Unit, where 40-50 of the "most incorrigible inmates within the entire DOC used to be housed."  He stated that they accused everyone of everything, so it was no surprise that he had allegations of excessive force lodged against him.  However, upon investigation, none of the allegations were deemed founded.

video footage viewed by the Court. On the other hand, Defendant Keller was fired and criminally charged.

Finally, Plaintiff argues that Defendants Stoner and Wright are liable because they were present for at least part of the attack and acquiesced in their subordinates conduct by virtue of their supervisory positions over Defendants Keller, Mari and Zosky. However, the Court has already determined that Defendants Zosky and Mari did not use excessive force, and, most importantly, there is no direct link between any alleged wrongdoing on the part of the supervisory Defendants and the actions of Defendant Keller with respect to the incident in question. No matter how Plaintiff attempts to frame the issue (be it a lack of training in the appropriate use of force, failure to monitor and supervise employees, failure to investigate incidents of abuse, etc.) the simple fact is that Defendant Keller's application of force was sudden and unexpected. In other words, it cannot be contributed to any alleged conduct on the part of the supervisory Defendants and the alleged measures Plaintiff claims they could have employed would not have prevented the incident from occurring. Therefore, summary judgment will be granted on these Counts.

3. State Tort Claim (Counts V, VI)

Plaintiff claims that Defendants Keller, Zosky, Stoner and Mari committed the state torts of assault and battery and intentional infliction of emotional distress. The moving Defendants maintain that they are entitled to sovereign immunity for these claims.

In 1978, the Pennsylvania General Assembly passed the Act of September 28, 1978, P.L. 788, No. 152, 1 Pa.C.S. § 2310, which is a comprehensive tort claims act that provides sovereign immunity for the Commonwealth, its agencies, and employees acting within the scope of their employment. There are nine exceptions to this sovereign immunity. They are: (1) vehicle

liability; (2) medical/professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S. § 8522. Additionally, sovereign immunity applies to intentional as well as negligent torts. *See* Story v. Mechling, 412 F. Supp. 2d 509, 519 (W.D. Pa. 2006).

Plaintiff does not dispute that Defendants Zosky, Stoner and Mari have sovereign immunity provided that the actions of these Defendants fell within the scope of their employment. Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpected by the employer. Wesley v. Hollis, No. 03-3130, 2007 U.S. Dist. LEXIS 41562, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007).

Here, Defendants Zosky, Stoner and Mari's actions fell within the scope of their employment. The security video footage clearly shows these Defendants attempting to break-up the physical attack on Plaintiff, even if they attempted to restrain Plaintiff before restraining Defendant Keller. As corrections' staff, an aspect of their job is to restore order and discipline in situations such as the one at issue herein, and they used an amount of force that was necessary in order to accomplish that task. Therefore, the moving Defendants are entitled to sovereign immunity on Plaintiff's state law tort claims.

### E. Conclusion

For the aforementioned reasons, the moving Defendants' Motion for Summary Judgment (ECF No. 53) will be granted. The remaining claims are those against Defendant Keller. A separate Order will issue.

Dated: March 31, 2014

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge


cc: Counsel of Record
 *Via CM/ECF Electronic Mail*